UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| THIRD DEGREE FILMS, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOHN DOES 1-8, )<br>)<br>Defendants. )<br>) | Civil Action Case No. 1:12-cv-01329-EGS-JMF |

**PLAINTIFF'S OBJECTION TO MAGISTRATE'S RULING**

I.   **Introduction**

Pursuant to LCvR 72.2 Plaintiff respectfully objects to the Memorandum Order by the Honorable Judge Facciola to the extent it states, "Plaintiff may not engage in any settlement discussions with any persons identified by the ISPs in response to the subpoenas." DE 10 at *3. On July 26, 2012 Plaintiff filed its Complaint for copyright infringement against seven John Doe Defendants with IP addresses that traced to a location within this District. See Complaint DE 1. Plaintiff requested leave to serve third party subpoenas prior to a Rule 26(f) conference so that it may identify the Defendants. Because the Defendants are anonymous internet users known only by an IP address, Plaintiff had no other option to determine their identity and proceed with its case. On September 24, 2012 Judge Facciola granted Plaintiff its order allowing it subpoena the ISPs with certain conditions. See DE 10. Plaintiff only objects to the Order to the extent it enjoins Plaintiff from settling its claims.

Plaintiff respectfully objects to this condition of the Order because the Court effectively entered an injunction without enabling either party to be heard. The Court further did not consider the severe harm Plaintiff will face by being forced to litigate each claim without the

1

option of any early resolution.  Finally, Plaintiff believes this injunction impermissibly burdens its right to settle under the Petition Clause.

## II. <u>The Order Constitutes An Improper Injunction</u>

The Order states: "Plaintiff may not engage in any settlement discussions with any persons identified by the ISPs in response to the subpoenas". <u>See</u> DE 10 at *3.  The Order effectively enjoins Plaintiff from settling its claims with Defendants.  Plaintiff does not consent to this injunction without the opportunity to be heard and without a prescribed time that the injunction will end.  This injunction directly impacts Plaintiff's ability to effectively manage its cases.  It further impermissibly burdens Plaintiff's right under the petition clause.

### A.  <u>The Court Must Provide Notice Before Enjoining Plaintiff</u>

The Federal Rules of Civil Procedure clearly outline guidelines for issuing a preliminary injunction and a temporary restraining order.  "Defined broadly, a preliminary injunction is an injunction that is issued by the court to protect plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits." 11AC. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2947, p. 121 (2d ed. 1995).  Fed. R. Civ. P. 65 states: "**(1)** *Notice.* The court may issue a preliminary injunction only on notice to the adverse party."

"The purpose of Rule 65(a)(1)'s notice requirement is to allow the opposing party a fair opportunity to oppose the preliminary injunction." <u>United States v. Microsoft Corp.</u>, 147 F.3d 935, 944 (D.C. Cir. 1998).  "Compliance with this notice requirement [pursuant to Rule 65(a)(1)] is mandatory, and the rule has constitutional as well as procedural dimensions."). <u>Sterling Commercial Credit--Michigan, LLC v. Phoenix Indus. I, LLC</u>, 762 F. Supp. 2d 8, 14 (D.D.C. 2011).  "This notice requirement 'reflect[s] the fact that our entire jurisprudence runs counter to

the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute.'" Id. (citing Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers, 415 U.S. 423, 438–39, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974)).  Here, the Court issued a preliminary injunction without the opportunity for either party to be heard. Indeed, Defendant's have not even been identified yet.

B. The Court Should Not Enjoin Plaintiff Based on Conduct From Separate Cases

To explain its reasoning for refusing to allow Plaintiff to settle, the Court points to its Order issued in West Coast Productions Inc. v. John Does 1 – 1,434, 1:11-cv-00055-JEB-JMF (D.D.C. Aug. 6, 2012) ("West Coast").  The Court, in West Coast, points to certain actions by the plaintiff that would cause concerns on the equity of settlements.  For example, in West Coast the plaintiff joined over fourteen hundred defendants in one case and made no effort of showing that the defendants resided in this District.  Here, Plaintiff has sued only eight Defendants, which involves vastly different case management needs by both the Court and Plaintiff.  Further, Plaintiff has made a good faith showing that personal jurisdiction and venue are proper.  See Complaint DE 1.  Further, in West Coast, the plaintiff ran a "settlement" website to facilitate mass settlements.  See West Coast, at *12.  Plaintiff does not run a settlement website and communicates directly to each defendant regarding its case and claims as well as the defendant's right to retain counsel.  Additionally, Plaintiff does not have the same counsel as in West Coast.

Although Plaintiff and West Coast are both movie studios that have experienced online copyright infringement, no other similarities exist.   The Court should not grant an injunction against Plaintiff, without providing an opportunity for Plaintiff to be heard, based on actions of other plaintiffs in other cases.  "It goes without saying that an injunction is an equitable remedy.

It 'is not a remedy which issues as of course.'' Weinberger v. Romero-Barcelo, 456 U.S. 305, 311 (1982).

"The Court has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." Id. at 312. When issuing an injunction there must be a showing that the irreparable injury is likely in the absence of an injunction, not merely speculative. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008) ("[A] preliminary injunction will not be issued simply to prevent the possibility of some remote future injury"). Here, the Court's claims for enjoining Plaintiff from settling are speculative based on filings and pleadings in similar but separate proceedings.

Recently, the District Court for the Central District of Illinois addressed the issues of settlements, finding that Plaintiff has not indicated any wrong doing to assume an unfair settlement tactics.

> The fact that Collins, and others, may settle these suits quickly also does not indicate any wrongdoing. Settlement of civil disputes is generally a positive outcome, not a negative one. Doe/4 also claims the settlement amounts are small; the small amounts, however, may again reflect the value of the claim and the cost of litigation, nothing more.
>
> ***
>
> Doe/4 further makes no showing that Collins is fabricating a false claim. Doe/4 does *not* allege that Collins pulled the Alleged IP Addresses out of thin air without a good faith basis to believe those addresses were used to download the Work. Doe/4 does *not* challenge any of the procedures used by Collins' investigator to identify infringing IP addresses, including the Alleged IP Addresses. Doe/4 does *not* dispute that the Alleged IP Addresses were used to download and upload portions of the same unique copy of the Work. Doe/4, thus, does *not* dispute that Collins traced the Alleged IP Addresses to this District. Doe/4 presents *no* basis for the claim that Collins is improperly attempting to extract settlements from innocent people.

Patrick Collins, Inc. v. John Does 1-9, 12-CV-3161, 2012 WL 4321718 (C.D. Ill. 2012).

### C. The Court Did Not Balance the Four Factors for a Preliminary Injunction

In order to enter an injunction, a court must consider certain factors which require a balancing test. Here, the Court did not discuss the elements required to impose an injunction. "On a motion for a preliminary injunction, the district court must balance four factors: (1) the movant's showing of a substantial likelihood of success on the merits, (2) irreparable harm to the movant, (3) substantial harm to the nonmovant, and (4) public interest." Davis v. Pension Ben. Guar. Corp., 571 F.3d 1288, 1291 (D.C. Cir. 2009). First, neither party has moved for this injunction. Indeed, both Plaintiff and Defendant are at risk for substantial harm. By preventing Plaintiff from settling any of its claims, the Order causes Plaintiff to expend resources that may not have been necessary. Further, the Order is ambiguous, and does not provide any deadline or anticipatory date to retract the injunction against Plaintiff to enter settlement negotiations. Without question, the cost of litigating full trials that could have been resolved early will subject Plaintiff to significant unnecessary expense, time and work.

Further, Defendants may not wish for Plaintiff to litigate its case against them. Many defendants, with and without counsel, admit to Plaintiff mea culpa. If these defendants are forced to defend Plaintiff's claims, denying their free will to settle, the defendants will be denied the ability to resolve the dispute anonymously, and will be forced to litigate a case that will subject them to high statutory damages and attorney's fees. Like a defendant in any case, here Defendants may not wish to spend months tied to public federal litigation for acts they know they committed.

For Defendants that insist on their innocence, it is common knowledge that a Defendant does not have to settle a claim that it did not commit. "[P]arties settle cases routinely without judicial review of the parties motivation to settle, and the Court is not inclined to create a special

5

proceeding to inform any particular John Doe Defendant of a right which is obviously commonly known, *i.e.* his or her right to defend and litigate this lawsuit." Malibu Media, LLC v. John Does 1-9, 8:12-cv-669-T-23AEP, *4 - 5 (M.D. Fla. July 6, 2012).

Further, more moderate remedies exist to achieve the intended purpose, such as requiring the ISP to include a notice to the Defendant's of their rights, or requiring Plaintiff to mail a copy of the Court's order to each Defendant. Indeed, simply requiring Plaintiff to notify Defendant when it discusses settlements that is has a Rule 11 obligation before proceeding with its case, that Defendant has a right to seek counsel, or requiring Plaintiff to request exculpatory evidence, accomplishes the same purpose without causing significant harm to either party. "While responding to demands to settle unfounded claims is burdensome, it is likely less burdensome than if the opposing party, fearing liability in tort for demanding settlement of a possibly weak claim, proceeded directly to litigation." Select Comfort Corp. v. Sleep Better Store, LLC, 838 F. Supp. 2d 889, 897 (D. Minn. 2012).

Finally, public policy has traditionally always favored settlements in cases. The Supreme Court has stated that public policy favors resolutions through settlement. "Rule 68's policy of encouraging settlements is neutral, favoring neither plaintiffs nor defendants; it expresses a clear policy of favoring settlement of all lawsuits." Marek v. Chesny 473 U.S. 1, 11 (1985). "[T]he settlement of cases serves the dual and valuable purposes of reducing the strain on scarce judicial resources and preventing the parties from incurring significant litigation costs." Id.

> It is universally considered that the interests of justice are best subserved by allowing parties to litigation full liberty to compromise and settle it at any time during its pendency, without interference by third persons, when the whole legal and equitable title to the cause of action rests in the plaintiff, and the sole responsibility to answer to the plaintiff's claim rests upon the defendant.

Weller v. Jersey City, H. & P. St. Ry. Co., 68 N.J. Eq. 659, 663, 61 A. 459, 460 (1905).

### III.     Plaintiff Has a Right Under the Petition Clause to Make Settlement Demands

"Where differences arise between parties, it is their right to settle such differences between themselves, or to appeal to the courts; and these rights should not be taken from them and lodged in a third party without an express agreement." Mercantile Trust Co. v. Hensey, 27 App. D.C. 210, 215 (D.C. Cir. 1906) aff'd, 205 U.S. 298 (1907). "That the plaintiff chooses, after obtaining identifying information, to pursue settlement or to drop its claims altogether is of no consequence to the Court. The plaintiff has sufficiently pled allegations of copyright infringement and has a right to name or decline to assert claims against defendants whose identities and other relevant circumstances become known to the plaintiff." AF Holdings LLC v. Does 1-1,058, 83 Fed. R. Serv. 3d 10 (D.D.C. 2012). "The purpose of Rule 68 is to encourage the settlement of litigation. In all litigation, the adverse consequences of potential defeat provide both parties with an incentive to settle in advance of trial." Delta Air Lines, Inc. v. August, 450 U.S. 346, 352 (1981).

By preventing Plaintiff from settling its disputes with Defendants without the opportunity to be heard, and with no evidence of any improper conduct by Plaintiff, the Court is impermissibly burdening Plaintiff's rights under the petition clause to bring its claim for copyright infringement. "[E]xtending immunity to private presuit demand letters protects the same interests the Supreme Court has identified as implicated in the Petition Clause's protection of private litigation." Sosa v. DIRECTV, Inc., 437 F.3d 923, 936 (9th Cir. 2006). In Sosa, the Ninth Circuit held that the Petition Clause of the First Amendment extended to presuit settlement demand letters. "'[T]he ability to lawfully prosecute even unsuccessful suits adds legitimacy to the court system as a designated alternative to force.' *BE & K,* 536 U.S. at 532, 122 S.Ct. 2390. 'These interests are equally served when disputes are resolved outside the formal litigation

7

process through presuit settlement demands, backed up by the possibility of resort to the courts.'" Id. at 936-937.

By refusing to allow Plaintiff to settle its claims, the Court is burdening Plaintiff's ability to bring its claims. Here, there is no evidence that Plaintiff's claims are meritless. Indeed, in West Coast, the Court noted, "the two approaches that permit discovery, … are, in my view, most consistent with plaintiffs' unquestionable right, in this Circuit, to conduct jurisdictional discovery." West Coast, at *23 (emphasis added). "In this area of human creativity, there is the greatest likelihood of massive infringement given the ever increasing use of the Internet to download digital media. Paradoxically, the protections provided to these copyright holders by the Copyright Act would evaporate, unless copyright holders are permitted to engage in this discovery." Id. at *24.

"Because of the very nature of internet infringement, it is often the case that a plaintiff cannot identify an infringer in any way other than by IP number. Given the substantial federal policy underlying copyright law, it would be a travesty to let technology overtake the legal protection of that policy." Malibu Media v. John Does 1-34, 1:12-cv-01188-JES-JAG, (C.D. Il. Aug. 1, 2012). Given that Plaintiff has an unquestionable right to bring its claim for copyright infringement, Plaintiff's litigation clearly falls under the petition clause. By enjoining Plaintiff from settling its claims, Plaintiff is being discouraged from petitioning the government for redress from a serious injury. As stated above, without being able to seek early resolution of claims, both parties face significant burdens in the form of expense and time. The resources of what may be unnecessary litigation will significantly consume Plaintiffs resources and substantially inhibit Plaintiff from bringing its claims.

The creators and owners of Plaintiff work tirelessly to create an artistic and unique

8

product, which has evinced a significant demand. Plaintiff simply desires to preserve its core business by enforcing its copyrights and protecting its valuable product from theft. The creators of Plaintiff also invest significant resources in pursuing all types of anti piracy enforcement such as Digital Millennium Copyright Act ("DMCA") take down notices and direct efforts aimed at infringing websites. Despite sending thousands of DMCA notices a day, the infringement continues. Plaintiff's movies are constantly illegally streamed and made available for download. Plaintiff faces upwards of 60,000 infringements through BitTorrent per month. Without these suits, infringers would feel free to take without consequence.

Plaintiff's goal is to successfully sue the most egregious infringers and at the same time establish a significant deterrent for those tempted to take its products for free. In order for its litigation to have any deterrent effect, Plaintiff must sue enough people for an individual to have a reasonable belief that if they break the law, they will be penalized. As the former Register of Copyrights, Mary Beth Peters stated to the Senate Judiciary, "[w]hile we would like to think that everyone obeys the law simply because it is the law and out of a sense of obligation, we also know that laws without penalties may be widely ignored."[1]

> Copyright owners <u>have every right to enforce their rights in court,</u> whether they are taking action against providers of peer-to-peer services designed to profit from copyright infringement or against the persons engaging in individual acts of infringement using such services.[2] (Emphasis added).

Congress enacted the Digital Theft Deterrence Act of 1999 to deter online infringement by increasing the penalties therefore. See <u>Sony v. Tennenbaum,</u> 660 F.3d 487, 497 (1st Cir.

---

[1] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) <u>available at</u> http://www.copyright.gov/docs/regstat090903.html

[2] <u>Pornography, Technology, and Process: Problems and Solutions on Peer-to-Peer Networks Statement of Marybeth Peters The Register of Copyrights before the Committee on the Judiciary</u> 108th Cong. (2003) <u>available at</u> http://www.copyright.gov/docs/regstat090903.html


2011) (citing the Congressional record and holding that non-commercial individuals commit infringement by distributing copyrighted works online). The Supreme Court has held file sharing of copyrighted works is infringement. See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd. 545 U.S. 913, 125 S.Ct. 2764 (2005). Two circuit courts opined that Rule 45 subpoenas may be used to identify online copyright infringers. See In re Charter Communications, Inc. Subpoena Enforcement Matter, 393 F.3d 771, 774 (8th Cir. 2005); Arista Records, LLC. v. Doe 3, 604 F.3d 110 (2d Cir. 2010). Courts unanimously hold that Plaintiff's First Amendment right under the Petition clause to bring a suit for infringement outweighs any First Amendment right proffered by an alleged infringer. See e.g., Sony Music Entertainment, inc. v. Does 1-40, 326 F.Supp.2d 556 (S.D.N.Y. 2004) (and the cases citing thereto).

The only way to enforce one's copyrights against online infringement is to bring suits like the one currently before this Court. Requiring Plaintiff to expend the resources to litigate every claim against a Defendant, without any relief or potential for early resolution prevents Plaintiff from effectively deterring infringement and exercising its rights under the Petition Clause.

## IV. Conclusion

For the foregoing reasons, Plaintiff respectfully objects to Magistrate Judge Facciolla's Order enjoining Plaintiff from settling its claims.

Dated: October 9, 2012

Respectfully Submitted,

By: /s/ *Jon A. Hoppe*
Jon A. Hoppe, Esquire #438866
Counsel
Maddox, Hoppe, Hoofnagle & Hafey, L.L.C.
1401 Mercantile Lane #105
Largo, Maryland 20774
(301) 341-2580

# CERTIFICATE OF SERVICE

I hereby certify that on October 9, 2012, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF and that service was perfected on all counsel of record and interested parties through this system.

/s/ *Jon. A. Hoppe*
Jon A. Hoppe